KAREN P. HEWITT
United States Attorney
AARON B. CLARK
Assistant U.S. Attorney
California State Bar Nos. 239764
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6787
Email: aaron.clark@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FERNANDO VELIZ,<br><br>Defendant. | Criminal Case No. 07CR3403-DMS<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Date: May 27, 2008<br>Time: 9:00 a.m.<br>Honorable: Dana M. Sabraw |

COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Aaron B. Clark, Assistant United States Attorneys, and respectfully submits the following Trial Memorandum.

**I**

**STATEMENT OF THE CASE**

**A. INDICTMENT**

The Defendant, Fernando Veliz (hereinafter "Defendant"), was charged by a grand jury on December 19, 2007 with violating Title 8 U.S.C. 1326(a) and (b), Deported Alien Found In the United States. Defendant was arraigned on the Indictment on January 3, 2008, and entered a plea of not guilty.

//

**B. TRIAL STATUS**

Trial is scheduled for Tuesday, May 27, 2008, at 9:00 a.m. before the Honorable Dana M. Sabraw. The United States anticipates that its case-in-chief will last one day.

**C. STATUS OF COUNSEL**

Defendant is represented by Maxine Dobro.

**D. CUSTODY STATUS**

Defendant is in custody.

**E. INTERPRETER**

The United States does not need an interpreter for any of its witnesses. The Defendant may need a Spanish interpreter.

**F. JURY WAIVER**

Defendant has not waived trial by jury.

**G. PRETRIAL MOTIONS**

On January 25, 2008, the Government filed a motion for fingerprint exemplars and reciprocal discovery. The Court has reserved ruling on them.

On January 18, 2008, Defendant filed a motion for discovery. The Court has reserved ruling.

On May 9, 2008, the Government filed motions *in limine* to: (1) Exclude Witnesses; (2) Prohibit Reference to Punishment, Etc.; (3) Preclude Testimony of Character Witnesses; (4) Preclude Evidence of Duress or Necessity; (5) Preclude Expert Testimony; (6) Exclude Evidence About Re-entry; (7) Exclude Prior Residency Evidence; (8) Admit A-file Documents; (9) Preclude Argument Regarding Warning; (10) Prohibit Reference to Document Destruction; (11) Prohibit Collateral Attack of Deportation; and (12) a Renewed Motion for Reciprocal Discovery. The Court is scheduled to rule on these motions at the May 23rd hearing at 11:00 a.m.

**H. STIPULATIONS**

There are no stipulations between the parties.

**I. DISCOVERY**

The United States has complied with its discovery obligations. Defendant has not provided any reciprocal discovery.

## II

## STATEMENT OF THE FACTS

### A. IMMIGRATION HISTORY

Defendant is a Guatemalan citizen who was ordered deported after a hearing before an immigration judge on October 13, 1999. Defendant was most recently physically removed from the United States to Guatemala through Phoenix, Arizona on January 25, 2006.

### B. RAP SHEET SUMMARY CHART

| CONVICT DATE | COURT OF CONVICTION | CHARGE | TERM |
|---|---|---|---|
| 7/20/05 | CASC San Bernardino | HS 11379(a) Transp. Controlled Substance | 2 Years |
| 7/13/05 | CASC Contra Costa | PC 288(A) Lewd or Lascivious Acts w/Child Under 14 Years | 365 Days Jail, 3 years probation |
| 12/22/04 | CASC Oakland | VC 23152(B) DUI Alcohol/Drugs/.08 Percent (m) | 36 Months Probation |
| 1/13/98 | CASC San Bernardino | HS 11379(a) Transp. Controlled Substance | 270 Days |

### C. DEFENDANT'S APPREHENSION

On October 2, 2007, at approximately 7:15 a.m., United States Border Patrol ("BP") Agents Emidio Pepe and Joshua Nations were patrolling the International border near Jacumba, CA. There area is approximately 25 miles East of the Tecate, California Port of Entry. At the time, Agent Nations observed two people walking North, approximately 500 yards Southwest of callbox 702 on Interstate I-8.

Agent Nations approached the area he had seen the two individuals, eventually contacting one of the individuals walking back toward him out of a group of large boulders. Agent Nations and Pepe shortly thereafter also found Defendant attempting to conceal himself amongst the boulders.

The agents then identified themselves as Border Patrol Agents and queried the two regarding their immigration status. Defendant then claimed he was a Mexican citizen without documents to be in the United States legally.

At the station, records checks revealed Defendant had been previously deported.

Defendant elected to invoke his Miranda rights.

**III**

**PERTINENT LAW**

**A. 8 U.S.C. § 1326 - DEPORTED ALIEN FOUND IN THE UNITED STATES**

The United States must prove beyond a reasonable doubt that:

1. Defendant was deported from the United States;
2. After deportation, Defendant voluntarily entered the United States;
3. After Defendant entered the United States, he knew he was in the United States and knowingly remained;
4. Defendant had not obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and
5. Defendant was an alien at the time of his entry into the United States.

Committee on Model Criminal Jury Instructions - Ninth Circuit, Manual of Model Jury Instructions for the Ninth Circuit, §9.5A (West ed. 2003, approved January 2007).

**B. ALIENAGE**

The Ninth Circuit could not be more clear when it held that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule." See United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001) (affirming the admission of deportation documents to prove alienage). The Ninth Circuit has also made clear the type of deportation documents that may be used as evidence of alienage:

> Although neither a deportation order, see United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (citing United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir. 1994)), nor the defendant's own admissions, see United States v. Hernandez, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior **deportation order**, **admissions Ramirez-Cortez made in his underlying deportation proceeding**, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien. Cf. United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (finding sufficient evidence of alienage where the government's evidence consisted of a prior **deportation order**, the defendant's admissions to an INS agent that he was a Mexican citizen, and his **admissions during the**

> **deportation hearing** that he was not a United States citizen); United States v. Contreras, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior **deportation order**, the **deportation hearing transcript**, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen).

United States v. Ramirez-Cortez, 213 F.3d 1149, 1158 (9th Cir. 2000) (emphasis added).

The Ninth Circuit has affirmed the admission of orders to show cause, see Sotelo, 109 F.3d at 1449, admissions made during deportation hearings, see id., and transcripts, see Contreras, 63 F.3d at 858. In Sotelo, the Ninth Circuit described a list of evidence that was admitted at trial which supported a defendant's § 1326 conviction:

> The prosecution also presented several documents from the prior deportation proceeding. During the **deportation hearing**, Sotelo admitted, through his lawyer, allegations in the order to show cause that he is not a citizen or national of the United States and he is a native and citizen of Mexico. The prosecution presented the **order to show cause** and an **advisement of rights form**, which Sotelo signed. The advisement of rights form stated that Sotelo admitted he was in the United States illegally. Finally, the prosecution presented the order of deportation and the warrant of deportation, evidencing Sotelo's actual deportation.

109 F.3d at 1449 (emphasis added).

### C. PHYSICAL REMOVAL

The Ninth Circuit has held that deportation "refers to the removal from the country of aliens who are physically present in the United States." United States v. Romo-Romo, 246 F.3d 1272, 1275-76 (9th Cir. 2001); see also United States v. Luna-Madellaga, 315 F.3d 1224, 1227 (9th Cir. 2003) ("Section 1326 speaks only of 'removal.'" . . . "It plainly turns on the alien's physical removal -- not the order of removal."). As a result, the United States need only prove beyond a reasonable doubt that Defendant physically left the country sometime between the time he was ordered deported and the time he was found in the United States. See United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (citation omitted). A warrant of deportation may be sufficient evidence of physical removal. Id.

### D. EXPRESS CONSENT

The Ninth Circuit has stated what is required for permission to reapply:

> The INS has promulgated regulations that govern the process by which the Attorney General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R.

> § 212.2. These regulations include the requirement that a deported alien must have remained out-side of the United States for a minimum of five consecutive years. Id. § 212.2(a). Pina-Jaime did not meet this requirement. Nor did he submit the required form I-212 to the INS to obtain consent of the Attorney General to reapply for admission. See United States v. Sanchez-Milam, 305 F.3d 310, 312-13 (5th Cir. 2002), cert. denied, 537 U.S. 1139, 154 L. Ed. 2d 834, 123 S. Ct. 932 (2003). Accordingly, the Attorney General did not "expressly consent[] to [Pina-Jaime's] reapplying for admission" as required by the statute. See 8 U.S.C. § 1326(a)(2).

United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003). There is no evidence supporting that Defendant has done so.

As a result, any cross-examination regarding the lack of permission is irrelevant. In United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005), the defendant sought to elicit testimony on cross-examination from a witness for the United States regarding the following claims: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian never checked with the other federal agencies to inquire about documents relating to the defendant. Judge Lorenz sustained objections to this line of cross-examination finding that it was irrelevant. Id. The Ninth Circuit agreed stating that "[n]one of that information is relevant on the facts of this case, because it is uncontested that [the defendant] never made any application to the INS or any other federal agency." Id.

As in Rodriguez, Defendant has not presented any evidence that he had applied for reentry. As in Rodriguez, any testimony from witnesses for the United States regarding the types of checks performed to show the lack of an application for reentry would be irrelevant.

There is a second reason this type of cross-examination is irrelevant. It is true that the Ninth Circuit's model jury instruction requires the United States to prove the defendant's lack of permission to re-enter the United States beyond a reasonable doubt. Ninth Circuit Manual of Model Jury Instructions – Criminal § 9.5; see United States v. Rivera-Relle, 333 F.3d 914, 919 (9th Cir. 2003); United States v. Mateo-Mendez, 215 F.3d 1039 (9th Cir. 2000). However, unlike a true "element," lack of permission to re-enter is more like an affirmative defense. The Fifth Circuit has stated,

> [I]t is unclear whether Attorney General consent is even an element of 8 U.S.C. § 1326 or only an affirmative defense. The "unless" language would seem to indicate that it is an exception and is therefore more in the nature of a defense which the defendant must establish.

United States v. Terrazas-Carrasco, 861 F.2d 93, 96 (5th Cir. 1988). The Supreme Court has never ruled on this question, but in United States v. Mendoza-Lopez, 481 U.S. 828, 830-31 (1987), the Court called the "consent" clause an "exception" to the statute. The Court described section 1326 as providing the following:

> "Any alien who–
> "(1) has been arrested and deported or excluded and deported, and thereafter
> "(2) enters, attempts to enter, or is at any time found in the United States . . .
>
> "shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not mor than two years, or by a fine of not more than $1,000, or both."

Id. at 830-31. In a footnote, the Supreme Court added that the "consent" clause was an "exception" to the statute:

> The statute excepts those aliens who have either received the express consent of the Attorney General to reapply for admission or who otherwise establish that they were not required to obtain such consent. 8 U.S.C. § 1326(2)(A), (B).

Mendoza-Lopez, 481 U.S. at 831, n.2. The Court was not presented with the issue of whether the "consent" clause is an element or an affirmative defense. However, the language suggests that it should more properly be treated as a defense, and not as an element at all. See United States v. Gravenmeir, 121 F.3d 526, 528 (9th Cir. 1997) (holding, in possession of a machine gun prosecution, that "the exceptions contained in part (2) of the subsection establish affirmative defenses to the defined offense."). We think that Congress intended it to be an affirmative defense. After all, a defendant is in a much better position than the United States to know whether he has sought or obtained permission to re-enter the United States. Thus, unless Defendant intends to assert an affirmative defense that he reapplied, this type of cross-examination about the search performed for permission to enter is not relevant.

**E. LAWFULNESS OF PRIOR DEPORTATION**

Since physical removal is all that is required, the lawfulness of a defendant's prior deportation is not an element of the offense under § 1326 and should not be presented to the jury.

See United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc). The United States need only prove that a deportation proceeding actually occurred and that the defendant was consequently deported. United States v. Medina, 236 F.3d 1028, 1031 (9th Cir. 2001).

A deportation order or warrant is sufficient to establish the prior deportation. Id.; see also United States v. Bejar-Matrecios, 618 F.2d 81 (9th Cir. 1980) (holding a warrant of deportation is admissible as a Public Record, pursuant to F.R.E. 803(8)). A tape recording or transcript of the prior deportation is not required to prove the prior deportation. Medina, 236 F.3d at 1030-31.

Furthermore, although a defendant charged pursuant to § 1326 can preclude the United States from relying on a prior deportation in which the proceedings were so procedurally flawed that it "effectively eliminated the right of the alien to obtain judicial review," the mere absence of a tape recording or transcript of the deportation proceeding does not establish that the deportation was "fundamentally unfair." See id. at 1031-32 (citations omitted). Finally, because a defendant must also prove prejudice as a result of a flawed deportation proceeding, a vague assertion that he might be able to locate some defect in the proceeding if a tape recording was available is "no more than speculation to support his assertion of prejudice," and insufficient to meet his burden. Id. at 1032 (quoting United States v. Corrales-Beltran, 192 F.3d 1311, 1318-19 (9th Cir. 1999)).

**F. PRIOR CONVICTION**

A prior felony conviction is not an element of § 1326(a) and should not be presented to the jury. See United States v. Alviso, 152 F.3d 1195, 1199 (9th Cir. 1998) (citing Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998)). The Supreme Court has recently indicated that the Ninth Circuit's reasoning in Almendarez-Torres may have been incorrectly decided. See Apprendi v. New Jersey, 530 U.S. 466, 489-90 (2000); United States v. Nordby, 225 F.3d 1053, 1057 n.1 (9th Cir. 2000). The holding in Almendarez-Torres remains controlling law, however, until expressly overruled by the Supreme Court. See United States v. Pacheco-Zepeda, 234 F.3d 411, 414 (9th Cir. 2000), cert. denied, 532 U.S. 966 (2001).

//

//

//

**G. DUPLICATES**

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under circumstances, it would be unfair to admit the duplicate instead of the original. See Fed. R. Evid. 1003.

**IV**

**WITNESSES**

The Government reserves the right to add, omit, substitute or change the order of witnesses. Presently, the Government intends to call the following witnesses during its case-in-chief:

1. Emidio Pepe, United States Border Patrol
2. Josh Nations, United States Border Patrol
3. Thomas Steele, United States Border Patrol
4. Regina Benvenue, Immigration Enforcement Agent
5. Lisa Dimeo, Fingerprint Expert

**V**

**EXHIBIT LIST**

The Government will provide a final exhibit list on the morning of trial. Presently, the Government intends to offer into evidence the following:

1. Google Earth Map of Apprehension Area
2. Pictures of Apprehension Area
3. Order of Immigration Judge (October 13, 1999)
4. Warrant of Removal/Deportation (Form I-205) (January 25, 2006)
5. Redacted Copy of Defendant's July 17, 1991 Form I-589 [Request for Asylum in the United States]
6. Redacted Copy of Defendant's October 20, 1995 Form I-485 [Application to Register for Permanent Residence]
7. Redacted Copy of Defendant's July 22, 1998 Form I-751 [Application to Remove the Conditions on Residence]
8. Certificate of Non-Existence of Record [May 21, 2008]

9. Fingerprint Cards (October 2, 2007; May 16, 2008)

**VI**

**PROPOSED VOIR DIRE**

1. Of those of you who have sat on criminal juries, did any of those juries fail to reach a unanimous verdict?
2. Has anyone had an unpleasant experience with any law enforcement personnel?
3. Has anyone had any disputes with any agency of the United States Government?
4. Does anyone have relatives or close friends who have been investigated, arrested, accused or charged with a crime?
5. Does anyone have relatives or close friends who have been deported or removed?
6. Does anyone have strong feelings about the United States Border Patrol or any other federal agency involved in immigration issues?
7. Does anyone believe that immigration laws are too harsh?
8. Does anyone believe everyone should be allowed to enter the United States?
9. Does anyone believe that it should be legal to enter the United States without authorization?
10. Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?
11. Does everyone understand that the laws of the United States equally apply to everyone who enters the United States?
12. Does everyone understand that as a juror you are not to consider prejudice, pity or sympathy in deciding whether the Defendant is guilty or not guilty?
13. Does anyone think that, regardless of the strength of the evidence, he/she will have trouble deciding whether the Defendant is guilty or not guilty?
14. Does anyone think he/she cannot decide whether a person is guilty or not guilty?
15. Does anyone have religious or moral beliefs which will make it difficult for him/her to make a decision strictly based on the law and facts of this case?

//

**VII**

**JURY INSTRUCTIONS**

The United States will submit proposed jury instructions under separate cover. The United States reserves the right to submit additional instructions at the Fed. R. Crim. P. 30 conference.

**VIII**

**OTHER LEGAL ISSUES**

All outstanding legal issues will be addressed at the motions *in limine* hearing scheduled for May 23, 2008.

DATED: May 21, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ ***Aaron B. Clark***
AARON B. CLARK
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. FERNANDO VELIZ, Defendant. | Criminal Case No. 08CR3403-DMS<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, AARON B. CLARK, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S TRIAL MEMORANDUM** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Maxine Dobro

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 21, 2008.

/s/ ***Aaron B. Clark***
AARON B. CLARK
Assistant U.S. Attorney